UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Cause No. 1:21-CR-64-HAB |
| | ) | |
| JOSHUA R. LETNER | ) | |

**OPINION AND ORDER**

Defendant made the unfortunate decision to take a nap in a vehicle on a public street, tucked in with two firearms, a large brick of marijuana, and a baggie of fentanyl and methamphetamine. Law enforcement officers, responding to a 911 call, discovered those contraband items. Defendant now moves to suppress that evidence. The Court held an evidentiary hearing in August, and the parties have briefed their positions (ECF Nos. 37, 38). Because the Court credits the testimony of the officers on the basis for the search of Defendant's vehicle, the Court will deny the motion to suppress.

**I.   Factual Background**

On an early August morning in 2020, the Fort Wayne Police Department dispatch received a call of a white male going through the glovebox of a parked vehicle. Fort Wayne Police Officer Matthew Childs ("Childs") responded to the call. When he arrived at the location, he found a black Ford Mustang with both windows down. Childs took a "tactical position" towards the rear of the driver's side door. He found Defendant asleep in the driver's seat. By this time another police officer, Officer Beaver ("Beaver"), had also responded to the scene and took up position on the passenger side.

Childs approached the driver's side window and woke Defendant. When he woke, Defendant placed a brown bag that had been in his lap on the passenger seat. There was a brief

discussion during which Defendant provided his name. Childs returned to his police vehicle to run Defendant's name through his Spillman computer system. Childs determined that Defendant had a suspended license and further determined that the license plate on Defendant's vehicle did not match the vehicle. Defendant's Spillman record also had a "party armed alert," suggesting that Defendant might be armed.

Childs returned to the vehicle and asked Defendant to step out. Defendant questioned getting out of the vehicle because of a flare up of his gout. Childs helped Defendant out of the car and helped him have a seat on the curb. Defendant was not handcuffed and spoke with Childs as he sat on the curb.

By this time a third officer, Officer Kylen Hill ("Hill"), had also reported to the scene. Hill asked Defendant for permission to retrieve the registration information, which Defendant stated was on the driver's side visor, from the vehicle. Defendant agreed. Hill then approached the vehicle to get the VIN and retrieve the registration. Hill did not find the registration but did notice the odor of burned and raw marijuana coming from the vehicle. No other officer testified that they smelled any odor of marijuana coming from the vehicle.

Believing that he now had probable cause to search the vehicle, Hill opened the driver's side door. He immediately observed a handgun on the floorboard. Childs also observed the firearm. The officers decided to detain Defendant and conducted a pat down of his person. The pat down produced another firearm in Defendant's waistband. Defendant admitted that he did not have a license for the firearm in his waistband because he was a felon. Defendant was then arrested.

Because Defendant was being arrested, because of the false license plate, and because of Defendant's lack of a valid driver's license, the decision was made to tow Defendant's vehicle. Childs conducted an inventory search of the vehicle consistent with Fort Wayne Police Department

policy. Childs first searched the brown bag that had been on Defendant's lap. In the bag was a large amount of cash and baggies containing what Childs believed to be narcotics. Hill found a separate black bag in the back seat of the vehicle. Hill noticed the smell of raw marijuana coming from the bag. Inside he found several vacuum sealed bags containing what Hill believed to be marijuana.

## II.     Legal Discussion

Defendant presents three arguments in support of suppression. First, he argues that he was put under arrest without probable cause when he was seated on the curb. Second, he asserts that the officers lacked probable cause to search his vehicle. Finally, he claims the doctrine of inevitable discovery should not apply. The Court disagrees with Defendant on all fronts.

**1.     *The* Terry *Stop***

"To support an investigatory stop, officers need only reasonable suspicion—that is, a particularized and objective basis for suspecting the particular person stopped of breaking the law." *United States v. Shields*, 789 F.3d 733, 745 (7th Cir. 2015) (quoting *Heien v. North Carolina*, 574 U.S. 54, 61 (2014)). "The standard takes into account the totality of the circumstances—the whole picture." *Id*. (quoting *Navarette v. California*, 572 U.S. 393, 397 (2014)).

The Seventh Circuit has held that the suspicion that a defendant committed a traffic offense creates reasonable suspicion to support an investigatory stop. *See*, *e.g.*, *Shields*, 789 F.3d at 745 ("Because Mr. Shields does not dispute that he violated the Chicago Municipal Code by parking in the cross walk, the officers clearly had an objective basis to believe that he was violating the law."); *see also United States v. Muriel*, 418 F.3d 720, 724 (7th Cir. 2005) ("Probable cause exists when the circumstances confronting a police officer support the reasonable belief that a driver has committed even a minor traffic offense.").

Defendant does not meaningfully dispute the idea that the officers could conduct a brief investigatory stop based on the 911 call. Instead, he argues that, when officers helped him out of the car and to the curb, he "reasonably believed that he was seized." (ECF No. 37 at 5).

Subtle, and perhaps tenuous, distinctions exist between a *Terry* stop, a *Terry* stop rapidly evolving into an arrest and a de facto arrest. For example, probable cause may be required when police restraint is so intrusive that, while not technically an "arrest," it may be "tantamount" to an arrest. *Dunaway v. New York*, 442 U.S. 200, 212–16 (1979). Given the "endless variations in the facts and circumstances," there is no "litmus-paper test for determining when a seizure exceeds the bounds of an investigative stop" and becomes an arrest. *Florida v. Royer*, 460 U.S. 491, 506, (1983).

The reasonableness of an investigatory stop may be determined by examining: (1) whether the police were aware of specific and articulable facts supporting reasonable suspicion; and (2) whether the degree of intrusion was reasonably related to the known facts. In other words, the issue is whether the police conduct—given their suspicions and the surrounding circumstances—was reasonable. *Terry v. Ohio*, 392 U.S. 1, 19–20 (1968). Since *Terry* was decided, the "permissible reasons for a stop and search and the permissible scope of the intrusion [under the *Terry* doctrine] have expanded beyond their original contours." *United States v. Chaidez*, 919 F.2d 1193, 1198 (7th Cir. 1990). The intervening period "has witnessed a multifaceted expansion of *Terry*," including the "trend granting officers greater latitude in using force in order to 'neutralize' potentially dangerous suspects during an investigatory detention," *United States v. Perdue*, 8 F.3d 1455, 1464 (10th Cir. 1993). For better or for worse, the trend has led to permitting the use of handcuffs, placing suspects in police cruisers, drawing of weapons and other measures of force more traditionally associated with arrest than with investigatory detention.

When effecting a *Terry* stop, which is always a stop made at "close range," police officers must make a quick decision about how to protect themselves and others from possible danger. They are not necessarily required to "adopt alternative means to ensure their safety in order to avoid the intrusion involved in a *Terry* encounter." *Michigan v. Long*, 463 U.S. 1032, 1052 (1983); *United States v. Boden*, 854 F.2d 983, 994 (7th Cir. 1988). A court in its assessment "should take care to consider whether the police are acting in a swiftly developing situation, and in such cases the court should not indulge in unrealistic second-guessing." *United States v. Sharpe*, 470 U.S. 675, 686 (1985).

The mere use or display of force in making a stop does not necessarily transform a stop into an arrest if the context gives rise to a justifiable fear for personal safety. *United States v. Greene*, 783 F.2d 1364, 1367–68 (9th Cir. 1986). "To require an officer to risk his life in order to make an investigatory stop would run contrary to the intent of *Terry v. Ohio*." *United States v. Maslanka*, 501 F.2d 208, 213 n. 10 (5th Cir. 1974). *See*, *e.g*., *United States v. Hensley*, 469 U.S. 221, 235 (1985) (police officers were "well within the permissible range in the context of suspects who are reported to be armed and dangerous" in approaching, with their guns drawn, a vehicle they had stopped); *United States v. Serna–Barreto*, 842 F.2d 965, 968 (7th Cir. 1988) (officers' drawing guns did not automatically escalate investigatory stop into an arrest where officers' safety required such a measure). *Cf. United States v. Novak*, 870 F.2d 1345 (7th Cir. 1989) (*Terry* stop in an airport became an arrest; one officer pointed her gun at suspect as six to nine officers stopped the two defendants, who were not believed to be armed or dangerous and were not in a car and offered no resistance).

Defendant argues that there was little reason to remove him from the vehicle given the minor nature of the crimes being investigated. That may be, but Defendant downplays the risk to

5

the officers more than the facts support. True, Defendant was not being investigated for a violent crime, but it is not unreasonable to believe that a person with an expired license and a fictitious plate may not have the traffic laws at the front of his mind. He could decide, at any time, to leave the scene, and removing him from the vehicle removed that possibility. This is to say nothing of the Spillman alert that Defendant could be armed. The conduct being investigated was not egregious, but it wasn't nothing.

And, it must be said, the degree of intrusion here was also minor. Defendant was not handcuffed, placed in a squad car, or faced with weapons. Instead, he was assisted to the curb for what was, by all accounts, a cordial conversation with the responding officers. This sort of conversation is the hallmark of a traditional *Terry* stop.

Weighing the factors here, the Court finds the officers conduct to fall within the permissible scope of *Terry*. Nothing in the officers' actions lead the Court to believe that Defendant was under arrest as he sat on the curb. Instead, they were doing precisely what *Terry* authorizes: investigating. Defendant was not under arrest, and his argument to the contrary is no basis for suppression.

**B.**     ***The Search of the Vehicle***

Defendant next objects to the search of his vehicle, arguing that it was conducted without probable cause. Warrantless searches are per se unreasonable under the Fourth Amendment, subject to only certain exceptions. *Arizona v. Gant*, 556 U.S. 332, 338 (2009). Relevant here is the automobile exception, which allows authorities to search a car without a warrant if they have probable cause. *See United States v. Ross*, 456 U.S. 798, 807–09 (1982); *Carroll v. United States*, 267 U.S. 132, 149, 153–56 (1925). "Probable cause to search a vehicle exists when, based on the totality of the circumstances, 'there is a fair probability that contraband or evidence of a crime will

6

be found in a particular place.'" *United States v. Sands*, 815 F.3d 1057, 1063 (7th Cir. 2015) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).

Defendant concedes that the smell of burnt marijuana is enough to give officers probable cause to search a vehicle. ECF No. 37 at 8; *United States v. Kizart*, 967 F.3d 693, 695 (7th Cir. 2020). And Hill testified that he smelled both raw and burnt marijuana when he approached Defendant's vehicle. The only issue before the Court, then, is whether Hill's testimony is credible.

Credibility determinations made by a district court are entitled to "special deference" because of the ability to "listen[] to the testimony directly and observe[] the demeanor of the witnesses." *United States v. Simon*, 937 F.3d 820, 829 (7th Cir. 2019). Defendant raises several reasonable arguments challenging Hill's claimed detection of marijuana odor, most notably the fact that no other officer reported smelling marijuana despite their proximity to the vehicle and the fact that no burnt marijuana was found in the vehicle. But the Court had the ability to listen to Hill's testimony and observe his demeanor and it finds him credible. This Court is not a rubber stamp for incredible claims of superhuman olfactory senses, *United States v. Randle*, 1:21-CR-32-HAB, ECF No. 46, but the Court finds nothing incredible about Hill's testimony.

Because the Court finds Hill credible, the finding of probable cause flows. *Kizart*, supra. The Court finds that the search of Defendant's vehicle falls within the automobile exception to the warrant requirement. The search, then, provides no basis for suppression.

**C.**     ***Inevitable Discovery***

Even if the Court is wrong about these conclusions, it would still deny the motion to suppress because it finds that the doctrine of inevitable discovery applies. The inevitable discovery doctrine provides an exception to the exclusionary rule "when. . .the evidence in question would

inevitably have been discovered without reference to the police error or misconduct. . ..." *Nix v. Williams*, 467 U.S. 431, 448 (1984).

Inventory searches are a recognized exception to the warrant and probable cause requirements of the Fourth Amendment. *United States v. Wilson*, 938 F.2d 785, 788 (7th Cir. 1991). Searches conducted by the police before towing a car are "lawful if conducted pursuant to standard police procedures aimed at protecting the owner's property—and protecting the police from the owner's charging them with having stolen, lost, or damaged his property." *United States v. Pittman*, 411 F.3d 813, 817 (7th Cir. 2005).

Defendant does not dispute the Government's position that his lack of a valid license and the false and fictitious plate violation gave the officers the right to tow the vehicle and, in turn, conduct a pre-tow inventory search. *See* Ind. Code § 9-18.1-4-5(a) (providing that a vehicle "may not be used or operated on a highway" if it displays a license plate belonging to another vehicle). Instead, he argues that the officers may not have towed the vehicle but for Hill's claim that he smelled marijuana. He points to Childs' testimony that he had not decided whether to tow the vehicle prior to Hill's detection of the smell of marijuana.

The Court is unmoved. Because the Court has determined that there was nothing untoward about the search, it doesn't matter whether the ultimate decision to tow resulted from the narcotics arrest or the traffic infraction. Both were valid grounds to tow the vehicle and conduct a search prior to that tow. And Defendant provides no authority for his position that Childs' pre-search equivocation about whether he would have towed the vehicle without intervening events is relevant to the suppression inquiry. The Court has no trouble determining that the contraband in Defendant's vehicle would have been found in a pre-tow inventory search stemming from the false and fictitious license plate. As a result, there is no basis for suppression here.

**III.     Conclusion**

For these reasons, Defendant's Motion to Suppress (ECF No. 28) is DENIED.

SO ORDERED on December 13, 2022.

                                                   s/ *Holly A. Brady*
                                                   JUDGE HOLLY A. BRADY
                                                   UNITED STATES DISTRICT COURT